COMMONWEALTH *vs.* GERALD J. CROCKER.

Barnstable. May 6, 1981. — August 12, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Uttering Forged Instrument. Larceny. Practice, Criminal,* Duplicitous convictions, Sentence, Assistance of counsel. *Constitutional Law,* Sentence, Double jeopardy.

A defendant convicted of three distinct larcenies was not denied any constitutional rights when sentence was imposed under the provisions of G. L. c. 266, § 40, without prior notice to the defendant of the possible application of those provisions. [354-356]

A defendant's conviction at one trial for both larceny and uttering a forged instrument did not subject him to multiple punishments for the same offense in contravention of the double jeopardy clause of the Fifth Amendment to the United States Constitution or the common law rule expressed in *Morey* v. *Commonwealth,* 108 Mass. 433 (1871), since each offense required proof of a fact that the other did not; to the extent that this court departed from the *Morey* test in *Commonwealth* v. *Catania,* 377 Mass. 186 (1979), and *Commonwealth* v. *Cerveny,* 373 Mass. 345 (1977), by looking beyond the required elements of the statutory offenses to the actual evidence introduced at each defendant's trial in order to determine whether convictions were duplicitous, those opinions are overruled. [357-361]

There was no merit to a defendant's contention that he was deprived of the effective assistance of counsel at trial. [361]

INDICTMENTS found and returned in the Superior Court Department on September 26, 1977, and September 13, 1978.

The cases were heard by *Beaudreau,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Ellen A. Howard* for the defendant.

*Gary A. Nickerson,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   Following a jury-waived trial in the Superior Court, the defendant, Gerald J. Crocker, was convicted on three of five counts of larceny over $100, G. L. c. 266, § 30, and three of five counts of uttering a forged check, G. L. c. 267, § 5.   He was found not guilty on the remaining counts.   All the counts concerned checks purporting to be drawn on the account of DeYoung's Real Estate, Inc., which Crocker cashed at various branches of the Cape Cod Bank & Trust Company.   The three larceny and three uttering counts of which Crocker was found guilty involved the following three checks:   (1) a check for $236.76, cashed at Harwichport on June 22, 1977; (2) a check for $236.83, cashed at Orleans on June 23, 1977; and (3) a check for $198.76, cashed at Centerville on June 24, 1977.   On the larceny convictions, the trial judge adjudged Crocker a "common and notorious thief" under G. L. c. 266, § 40, and sentenced him to a term of eight to fifteen years at the Massachusetts Correctional Institution at Walpole.   On the uttering convictions, Crocker received two concurrent four- to ten-year sentences, to be served concurrently with the larceny sentence.   The Appellate Division of the Superior Court refused to alter the sentences.   Crocker appealed to the Appeals Court, and we transferred the case to this court on our own motion.

Crocker contends that (1) G. L. c. 266, § 40, is unconstitutional in its failure to require notice to a defendant that he may be sentenced under its provisions; (2) his convictions for both larceny and uttering are duplicitous; and (3) he was denied the effective assistance of counsel at trial.   We reject each of these contentions and affirm the convictions.

1. *The Question of Notice Prior to Sentencing Under G. L. c. 266, § 40.*

General Laws c. 266, § 40, provides in pertinent part that "whoever is convicted at the same sitting of the court . . . of three distinct larcenies, shall be adjudged a common and notorious thief, and shall be punished by imprisonment in the state prison for not more than twenty years or in jail

for not more than two and one half years."[1] Crocker argues that the failure to notify him in the indictment or prior to trial that he might be sentenced under c. 266, § 40, violated his Sixth Amendment right to be informed of the nature and cause of the accusation against him, his comparable right under art. 12 of the Declaration of Rights of the Massachusetts Constitution, and his right to be heard on the issue whether three "distinct larcenies" have been proved.

We have earlier held that a defendant may be sentenced under G. L. c. 266, § 40, without notice of the possibility appearing in the indictments. *Collins* v. *Commonwealth*, 315 Mass. 167, 169-170 (1943). See *Commonwealth* v. *McKnight*, 289 Mass. 530, 548 (1935). We see no constitutional compulsion to conclude otherwise here. The defendant Crocker, as was true of the defendants in *Collins* and *McKnight*, is simply being given one consolidated sentence for the three larceny offenses of which he has been duly convicted.[2] The sentencing scheme to which Crocker was subjected thus differs from that contained in the habitual criminal statutes, G. L. c. 278, § 11A, and G. L. c. 279, § 25, which authorize maximum punishment for the felony currently charged only upon allegation and proof of prior felonies for which a defendant earlier has been convicted and sentenced. See *McDonald* v. *Commonwealth*, 173 Mass. 322, 327 (1899), aff'd, 180 U.S. 311 (1901). Here, the indictments against Crocker gave him notice of the felonies charged, all of which were tried together and for which he was given a single sentence. Prior to trial, he need not have

---

[1] The maximum punishment for a single larceny over $100, in contrast, is either a five-year prison term, or a two-year jail term plus a $600 fine. G. L. c. 266, § 30.

[2] Crocker does not dispute that instead of the eight- to fifteen-year sentence he received under c. 266, § 40, he could have been given three consecutive sentences of a maximum of five years each on the three larceny counts, for a total sentence of fifteen years. Assuming, for example, that each sentence was from four to five years, the consecutive sentences would have totaled from twelve to fifteen years.

been informed, in addition to the accusations against him, of the sentence that might be imposed.[3]

That this case involves a jury-waived trial does not alter matters. Crocker argues that without notice of the allowable sentence under c. 266, § 40, the consequences of his waiver of jury trial were not "clearly foreseeable." See *Commonwealth* v. *Dietrich*, 381 Mass. 458, 462 (1980). We think the possible sentences contained in our criminal statutes are sufficiently foreseeable whether a defendant elects to be tried by a judge or a jury, and the failure expressly to inform the defendant of the statutory provisions in advance of trial does not vitiate his waiver of jury trial.[4]

Nor was Crocker denied an opportunity to be heard on the issue whether he had been convicted of three distinct larcenies, as required by c. 266, § 40. At the sentencing hearing, the prosecutor recommended disposition under c. 266, § 40, in light of Crocker's extensive record. Crocker, through his counsel, had a full opportunity to argue against the appropriateness of that disposition. We add that it is beyond question here that the three larcenies were "distinct." Cf. *Collins* v. *Commonwealth, supra; Commonwealth* v. *McKnight, supra* at 547.[5]

In sum, we conclude that Crocker's constitutional rights were not violated by the failure to inform him prior to trial of the possible application of the sentencing procedure of G. L. c. 266, § 40.

---

[3] The rule is otherwise when a defendant pleads guilty. In that event, he must be informed of the sentencing possibilities. Mass. R. Crim. P. 12 (c) (3) (B), 378 Mass. 868 (1979).

[4] It is not clear whether Crocker is actually claiming that his waiver of jury trial was not freely and knowingly given. We note that the proper remedy for such a claim, if successful, would be a new trial.

[5] At oral argument, counsel for Crocker conceded that she was not necessarily arguing that the felonious larcenies were not distinct. Such an argument would be untenable here, where the defendant cashed three separate checks (each over $100) in three different towns on three different days. Whatever the validity of the argument that in some cases three larcenies might be part of a "single scheme," such is not the case here.

2. *Alleged Duplicitous Convictions.*

Crocker contends that his convictions for both uttering and larceny are duplicitous, stemming as they do from the same transactions. He relies on language in *Commonwealth* v. *Catania*, 377 Mass. 186 (1979), in which, after stating the general rule that multiple punishments may not be imposed for both a greater and a lesser-included offense, we went on to say that where "both charges stem from the same incident, 'uttering a forged instrument' is another way of describing the false pretense required for proof of the larceny complaint[;] [t]hus the uttering offense is included within the larceny offense." *Id.* at 191. Because uttering is punishable more severely than larceny, however, Crocker would have us vacate the convictions on the less serious offense (larceny), leaving intact the convictions on the more serious offense (uttering), as is our usual remedy in cases of duplicitous convictions. See *Commonwealth* v. *Jones*, 382 Mass. 387, 395 (1981), and cases cited.

In refutation, the Commonwealth contends that under the rule established in *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871), uttering is not a lesser-included offense of larceny. For the reasons that follow, we agree with the Commonwealth's contention and conclude that neither uttering nor larceny is a lesser-included offense of the other and that the defendant's convictions for both offenses are not duplicitous.

We have recently repeated that to determine whether a defendant may be convicted of two statutory offenses arising from a single incident, "the long-prevailing test in this Commonwealth is whether each crime requires proof of an additional fact that the other does not. *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306-307 (1972). See *Blockburger* v. *United States*, 284 U.S. 299, 304 (1932) (adopting this test for Federal offenses). If so, neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not duplicitous." *Commonwealth* v. *Jones*, 382 Mass.

387, 393 (1981). In the context of multiple offenses prosecuted at a single criminal proceeding, as is the case here, we have generally adhered to the "required evidence" rule of *Morey*, by examining the elements of the statutory offenses charged to determine whether each offense requires proof of a different fact.[6]

Applying the *Morey* rule to the statutory offenses at issue here, we conclude that each offense requires proof of a fact that the other does not. Uttering a forged instrument, G. L. c. 267, § 5, requires the use of a forged or altered commercial instrument; larceny by false pretenses, G. L. c. 266, § 30 (1), does not. Larceny by false pretenses requires a permanent taking of property caused by reliance on the defendant's false statement, see *Commonwealth* v. *Leonard*, 352 Mass. 636, 644-645 (1967); uttering requires neither actual reliance nor any taking, see *Commonwealth* v. *Analetto*, 326 Mass. 115, 118 (1950). The *Morey* standard thus is satisfied.

---

[6] In *Kuklis* v. *Commonwealth*, 361 Mass. 302 (1972), for example, while affirming the defendant's conviction for possession of marihuana with intent to sell, we vacated his conviction of the lesser offense of simple possession because the latter offense required proof of no fact beyond what was necessary for conviction of the greater offense of possession with intent to sell. Applying the same principle in *Salemme* v. *Commonwealth*, 370 Mass. 421, 423-424 (1976), we sustained convictions for both assault with intent to murder while being armed, and assault and battery with a dangerous weapon, even though both offenses stemmed from the same attack, because proof of intent to murder was required in the first but not the second, and proof of battery was required in the second but not the first. For other cases in which we have found that the defendant has been wrongly punished for two offenses because the "required evidence" test of *Morey* and *Kuklis* has not been satisfied, see *Commonwealth* v. *Stewart*, 375 Mass. 380, 390-393 (1978); *Commonwealth* v. *White (No. 2)*, 365 Mass. 307, 308, 311 (1974), cert. denied, 419 U.S. 1111 (1975). Cf. *Commonwealth* v. *Grasso*, 375 Mass. 138, 140 (1978); *Gallinaro* v. *Commonwealth*, 362 Mass. 728, 733 (1973). The appropriate remedy for such duplicitous convictions is to vacate both the conviction and sentence on the lesser-included offense, and to affirm that on the more serious offense. See *Commonwealth* v. *Jones*, 382 Mass. 387, 395 (1981), and cases cited (extending the remedy not only to the duplicitous convictions resulting in consecutive sentences but also to those resulting in concurrent sentences).

Our conclusion in *Catania* that uttering was a lesser-included offense of larceny rested on the ground that the evidence presented at Catania's trial in support of the uttering offense was the same as that in support of the larceny offense. *Commonwealth* v. *Catania, supra* at 191. This approach followed that in *Commonwealth* v. *Cerveny*, 373 Mass. 345, 355-356 (1977), in which we also looked beyond the required elements of the statutory offenses (which is the focus of *Morey*) to the actual evidence introduced at the defendant's trial. Although in particular cases such an approach may lead to what appears to be a fair result for the defendant, we think this departure from the *Morey* test, as applied to the prosecution of multiple offenses in a single criminal trial,[7] runs the risk of unnecessary intrusion into the legislative prerogative to define crimes and fix punishments.

Whether characterized as a constitutional requirement under the double jeopardy clause of the Fifth Amendment to the United States Constitution or as a common law rule,[8]

---

[7] We do not address cases of successive prosecutions for offenses arising from one criminal transaction. Cf. *Costarelli* v. *Commonwealth*, 374 Mass. 677 (1978); *Commonwealth* v. *Gallarelli*, 372 Mass. 573 (1977). Determining whether such cases involve reprosecution for the "same offense" may require consideration of the actual facts developed at trial in support of the charge tried first, as different problems are presented when multiple prosecutions are involved. See *Brown* v. *Ohio*, 432 U.S. 161, 166-167 n.6 (1977); Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 S.Ct. Rev. 81, 112 n.148; Note, Twice in Jeopardy, 75 Yale L.J. 262, 267, 301-302 (1965).

[8] While noting at times that the Federal constitutional guarantee against double jeopardy protects not only against a second prosecution for the same offense but also against multiple punishments for the same offense, see, e.g., *Commonwealth* v. *Jones*, 382 Mass. 387, 396 n.11 (1981), we have usually refrained from resting decisions involving the latter situation on constitutional grounds. In such cases — where, at a single proceeding, the defendant has been convicted and sentenced for two offenses arising out of the same act — we generally have preferred to analyze the case under the common law *Morey* rule and have struck offending convictions and sentences as "duplicitous," rather than as violative of double jeopardy. See, e.g., *Commonwealth* v. *Jones, supra* at 392-397; *Commonwealth* v. *Catania*, 377 Mass. 186, 191 (1979);

the prohibition against duplicitous convictions at a single criminal proceeding is properly limited to ensuring that the court does not exceed its legislative authorization by imposing multiple punishments for a single legislatively defined offense. Once the Legislature has acted by defining a crime and its punishment, the court's role in this area is limited to implementing the legislative intent behind the statute. In short, the prohibition against duplicitous convictions limits not the legislative power to declare substantive criminal law but rather the judicial interpretation of that law. See *Whalen* v. *United States*, 445 U.S. 684, 688-690 (1980); *Brown* v. *Ohio*, 432 U.S. 161, 165 (1977); *Commonwealth* v. *Jones*, 382 Mass. 387, 393-394 (1981); *Kuklis* v. *Commonwealth*, 361 Mass. 302, 305-306 (1972); Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 S.Ct. Rev. 81, 111-122; Note, Twice in Jeopardy, 75 Yale L.J. 262, 302-304, 311-312 (1965).

In order to determine whether the Legislature in a given situation has authorized conviction and sentence under two statutory offenses, the *Morey* test provides a fitting rule of interpretation. The assumption underlying the *Morey* rule, which was adopted by the Supreme Court in *Blockburger* v. *United States*, 284 U.S. 299, 304 (1932), is that the Legislature "ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense' [as defined by *Morey* and *Blockburger*], they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Whalen* v. *United States, supra* at 692. Similarly, where expressions of legislative intent indicate that double punishment should not be imposed, courts should implement that intent even though the offenses are distinct under the *Morey* test. See *Commonwealth* v. *Jones, supra*.

*Commonwealth* v. *Cerveny*, 373 Mass. 345, 355-356 (1977); *Kuklis* v. *Commonwealth*, 361 Mass. 302, 305-306 (1972).

Here, no indication of legislative intent exists beyond that embodied in the *Morey* rule. As discussed above, uttering and larceny are distinct statutory offenses under *Morey*. Moreover, the statutes further distinct legislative policies. The prohibition against larceny by false pretenses, contained in the chapter punishing crimes against property (G. L. c. 266), is designed to protect against theft of property by fraudulent means. The prohibition against uttering a forged instrument, contained in the chapter punishing forgery and crimes against the currency (G. L. c. 267), is designed additionally to further the social interest in the integrity of commercial and other legal instruments. We therefore conclude that the defendant's convictions at one trial for both larceny and uttering did not subject him to multiple punishments for the same offense in contravention of the double jeopardy clause or any rule of our common law. We overrule and disregard any language in *Commonwealth* v. *Catania, supra,* and *Commonwealth* v. *Cerveny, supra,* that is inconsistent with this conclusion.

3. *Claimed Ineffective Assistance of Counsel.*

Crocker claims he was deprived of the effective assistance of counsel at trial. Having read the entire record, we see nothing approaching "serious incompetency, inefficiency, or inattention of counsel — behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Far from acting in a way that "'so botched' the defense . . . that the trial was a farce and mockery," as Crocker claims, trial counsel ably represented the defendant, vigorously attacked the circumstantial nature of the Commonwealth's case, and succeeded in obtaining not guilty verdicts on two counts each of larceny and uttering.

*Judgments affirmed.*