## COMMONWEALTH *vs.* AUGUSTO MORAIS.

Middlesex. April 3, 2000. - May 8, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Evidence,* Communication with social worker, Admissions and confessions, Voluntariness of statement, Fresh complaint. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement, Instructions to jury.

A person interviewed by a social worker assigned by the Department of Social Services, pursuant to G. L. c. 119, § 51A, to investigate a report of sexual abuse of a child, was not entitled to a cautionary warning that the investigator was obligated to report incriminating statements to law enforcement officials [382-383]; nor were the statements rendered involuntary for lack of such a warning [383-384].

At the trial of indictments for rape and indecent assault and battery on a child under the age of fourteen, the judge acted properly within his discretion in admitting testimony of two of four fresh complaint witnesses, and the judge's limiting instructions to the jury were complete and accurate. [384-386]

INDICTMENTS found and returned in the Superior Court Department on May 24, 1995.

A pretrial motion to suppress evidence was heard by *Joseph A. Grasso, Jr.,* J., and the cases were tried before *James F. McHugh, III,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Brownlow M. Speer,* Committee for Public Counsel Services (*Colette T. Tvedt,* Committee for Public Counsel Services, with him) for the defendant.

*Kevin J. Curtin,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant, Augusto Morais, was convicted by a jury of rape of a child and indecent assault and battery on a child under the age of fourteen. In this appeal, the defendant argues that his motion to suppress his statements to a Depart-

ment of Social Services (department) investigator and his subsequent statements to Chelmsford police officers should have been granted. He also contends that the trial judge erred in allowing the Commonwealth to introduce evidence of four fresh complaints at trial, and in omitting a limiting instruction after one witness's fresh complaint testimony. We granted the defendant's application for direct appellate review, and we now affirm the convictions.

1. *Motion to suppress.* In his order denying the defendant's motion to suppress, the judge found the following facts. See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990) (motion judge's subsidiary findings of fact accepted absent clear error). On May 15, 1996, the department assigned a social worker, Kathleen Tynan, to investigate a report made pursuant to G. L. c. 119, § 51A, alleging sexual abuse of a child.[1] After a preliminary inquiry, Tynan learned that the victim claimed that the defendant, the victim's cousin, had sexually assaulted her. Tynan met with the victim on May 16, and then later spoke with the defendant on the telephone, advising him that she was investigating the victim's allegations of sexual abuse. She asked the defendant to meet with her, and the defendant agreed.

On May 17, the defendant voluntarily went to the department office to meet with Tynan. Before this meeting, Tynan had had no contact with the police, nor had she received any instructions from the police to interview the defendant.[2] Tynan and the defendant met alone in an interview room. The defendant made several incriminating statements in response to Tynan's detailed description of the allegations of sexual abuse. He appeared to be lucid, communicated in English, and did not appear to be under the influence of drugs or alcohol. At the end of the interview, the defendant indicated that he realized that he had committed a crime. At no time did Tynan explain to the defendant that, under G. L. c. 119, § 51B, she was required to tell the district attorney's office and police any admissions he might make involving sexual abuse of the victim.

[1]Pursuant to G. L. c. 119, §§ 51A and 51B, upon receiving a report alleging sexual abuse of a child, the department conducts an investigation to determine whether the allegations may be substantiated. Once substantiated, the department is required to notify the district attorney's office in writing by transmitting a copy of the report detailing the results of its investigation.

[2]See note 1, *supra.*

On May 18, Tynan went to an interview of the victim held at the district attorney's office. After the interview, Tynan told Peter McGeown, a Chelmsford police officer attending the interview, what the defendant had said to her. The Chelmsford police then began an investigation. On May 22, the defendant went to the Chelmsford police station at the request of the police. He met McGeown and a police detective in an interview room, where he was read his Miranda rights and signed a Miranda card. He did not appear to be under the influence of drugs or alcohol, and appeared to understand English. The defendant then made several incriminating statements to the officers and wrote out his statements at McGeown's request.

a. *Minimal warnings and § 51B investigations.* First, the defendant argues that his statements to Tynan should have been suppressed because she failed to warn or give him notice that she was obligated to report incriminating statements to law enforcement officials, violating his constitutional due process rights. He contends that a department investigator is required to give a "minimal cautionary warning," similar to the warning required by *Commonwealth* v. *Lamb*, 365 Mass. 265, 269-270 (1974) (psychotherapist conducting court-ordered interview required to give warning to defendant that communications not privileged). We conclude that the defendant was not entitled to such a warning.[3]

We begin by noting that because the defendant was not in custody when interviewed by the department investigator, no Miranda warning was required during the investigatory interview. See *Commonwealth* v. *Berrio*, 407 Mass. 37, 41 (1990). Neither is a more minimal warning required. The defendant does not point to any case law in any other jurisdiction that would support the creation of a warning requirement in these circumstances. The defendant confuses a constitutionally required warning with a statutorily created privilege.

---

[3]We recognize the serious concerns faced by parents and caretakers subject to a § 51B investigation, who must either comply with department investigators or risk losing custody of their children. The department has also recognized these concerns in nonemergency situations, providing that "[a]t the time of the first contact with parent(s) or caretaker(s), the investigator shall deliver to said individual a statement of rights which shall include written notice that a § 51A report has been made, the nature and possible effects of the investigation, and that information given could and might be used in subsequent court hearings." 110 Code Mass. Regs. § 4.27(5) (1996). In this case, the subject of the § 51B investigation is the victim's cousin, and no such warning was required.

Our decision in *Lamb* was based on construction of the psychotherapist-patient privilege statute, G. L. c. 233, § 20B (*b*), and an exception to the statute that required a psychotherapist conducting a court-ordered interview to inform a patient that subsequent communications were not privileged. See *Commonwealth* v. *Lamb, supra* at 268-269. We have not recognized a *"Lamb* warning" outside the context of psychotherapist-patient privilege. Here, neither G. L. c. 119, § 51A, or § 51B, compels a department investigator to inform a potential defendant that any incriminating statements made will be reported to law enforcement officials. Moreover, no social worker-client privilege applies in this context, as the Legislature has expressly stated that otherwise applicable social worker privileges do not apply to a § 51B investigation. See G. L. c. 112, § 135B (*f*). Extending *Lamb*-type warnings to this case would run contrary to the Legislature's intent. We decline to establish a new rule requiring this type of limited warning.

b. *Voluntariness of statements.* Next, the defendant argues that his statements should be suppressed because they were involuntary. Citing to *Commonwealth* v. *Carp,* 47 Mass. App. Ct. 229 (1999), he asserts that his statements were involuntary because the investigator concealed from him her duty to report while eliciting incriminating statements.

To determine the voluntariness of a confession, we look to "the totality of the circumstances surrounding the making of the statement." *Commonwealth* v. *Souza,* 428 Mass. 478, 483-484 (1998), quoting *Commonwealth* v. *Raymond,* 424 Mass. 382, 395 (1997). See *Commonwealth* v. *Mahnke,* 368 Mass. 662, 680 (1975), cert. denied, 425 U.S. 959 (1976) (totality of circumstances test applies to statements made to private parties as well as to police officers). Further, "we accept the judge's subsidiary findings of fact unless not warranted by the evidence," and, while open to review, we afford the judge's ultimate findings "substantial deference." See *Commonwealth* v. *Raymond, supra* at 395, citing *Commonwealth* v. *Tavares,* 385 Mass. 140, 144-145, cert. denied, 457 U.S. 1137 (1982).

The motion judge concluded that the defendant made his statements to Tynan voluntarily. He found that the defendant "freely gave his statements in a non-coercive setting," voluntarily meeting with Tynan without being influenced by orders, threats, or promises. The defendant was aware that he was the subject of an investigation concerning allegations of sexual

abuse. The judge also found that the defendant appeared lucid and unconfused, did not appear to be under the influence of drugs, and conversed in English. Tynan had no contact with the police before interviewing the defendant, and made no misrepresentations to the defendant about her duties. See *Commonwealth* v. *Berrio, supra* at 41-42 (statements to department social worker admissible where judge found they "were prompted not by coercion but by the defendant's decision that his cooperation would best serve his own interests"). We therefore conclude that the defendant's statements to Tynan were voluntary.

Furthermore, the *Carp* case is clearly distinguishable. In that case, the judge suppressed a defendant's statements to a department investigator acting in tandem with the police. There, the totality of the circumstances, which included misrepresentations to the defendant that a criminal investigation was not being conducted and assurances that neither Miranda warnings nor an attorney were needed, "demonstrated that the defendant's will was overborne in that he was lulled into a false sense of security." See *Commonwealth* v. *Carp, supra* at 234. Although the Appeals Court did note that the department investigator failed to inform the defendant until the end of the interview that any incriminating evidence would be used against him, it was only one of a host of factors leading to a conclusion that the statements were involuntary.[4]

2. *Fresh complaint testimony.* We turn now to the defendant's claims that the trial judge abused his discretion in allowing two witnesses to testify about four fresh complaint incidents because such testimony was needlessly repetitive, and erred by omitting a limiting jury instruction after one of these witnesses testified.

At trial, the Commonwealth sought to introduce fresh complaint evidence through four witnesses — the victim's school guidance counsellor, teacher, school nurse, and a nurse

---

[4]Though the defendant does not dispute the voluntariness of his admissions to the Chelmsford police, he claims that these statements were the product of coercion arising from previous involuntary statements, made because "the cat was already out of the bag." We disagree. The motion judge correctly held that this was not a "cat out of the bag situation" because the initial statement by the defendant was not illegally obtained. Because we likewise conclude that the defendant's first statement was voluntary, we need not reach its effect on his second statement to the police. See *Commonwealth* v. *Larkin,* 429 Mass. 426, 437-438 (1999).

practitioner. The judge allowed the Commonwealth's motion in part, permitting the guidance counsellor to testify to three of the victim's disclosures of sexual abuse in her presence, and permitting the nurse practitioner to testify to a fourth disclosure.[5] The judge properly instructed the jury at trial after the guidance counsellor testified about each disclosure. The judge did not instruct the jury after the nurse practitioner testified. He did give a limiting instruction in his final instructions to the jury.

The fresh complaint doctrine "permits an out-of-court complaint seasonably made by the complainant in a sexual assault case to be admitted as part of the prosecution's case-in-chief," for the purposes of corroborating the complainant's testimony. *Commonwealth* v. *Peters*, 429 Mass. 22, 27 (1999). Although we have established no per se rule of how many fresh complaint witnesses may testify, see *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 445 n.5 (1996), citing *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 761 (1995), we have stated that "[t]rial judges should be cautious in admitting evidence of a fresh complaint." *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992). Trial judges should use discretion to prevent needless repetition of details, and instruct the jury on the proper use of fresh complaint evidence. See *id.*

In this case, the judge acted properly within his discretion. The judge prevented needless repetition of testimony by allowing only two of the four fresh complaint witnesses to testify. Additionally, the judge then gave complete and accurate limiting instructions three times during the guidance counsellor's testimony, and again in his final instructions to the jury. Such comprehensive instructions clearly informed the jury on the proper use of such evidence. Compare *Commonwealth* v. *Kirkpatrick, supra* at 444-445 & n.5 (no error where judge instructed jury twice during trial and in final charge after testimony of five fresh complaint witnesses), with *Commonwealth* v. *Trowbridge, supra* at 761-762 (reversible error where judge failed to give any adequate fresh complaint instructions to jury). We conclude that the judge's allowance of fresh complaint evidence was

[5]The guidance counsellor testified about the victim's initial disclosure to her of sexual abuse. She also testified about two similar disclosures that the victim made to a teacher and a school nurse later that same day in the guidance counsellor's office while she was present.

within his discretion, and that he adequately instructed the jury as to the purpose and use of such evidence.

*Judgments affirmed.*