# Commonwealth *vs.* Carlos Oliveira.

No. 00-P-377.

Bristol. October 10, 2001. - January 4, 2002.

Present: Porada, Gillerman, & Duffly, JJ.

*Lewdness. Open and Gross Lewdness and Lascivious Behavior. Indecent Assault and Battery. Assault with Intent to Rape. Evidence,* Fresh complaint. *Practice, Criminal,* Instructions to jury, Double jeopardy, Lesser included offense. *Constitutional Law,* Double jeopardy.

At a criminal trial, the judge did not err in failing to give limiting instructions before the fresh complaint testimony of the police sergeant who took the victim's statement, where the judge had given such instructions before receiving the fresh complaint testimony of the victim's mother, who testified shortly before the sergeant, and where the judge repeated the limiting instructions in his charge to the jury. [481-482]

At the trial of indictments charging indecent assault and battery and assault with intent to rape, the legislative purpose with respect to each indictment was sufficiently distinct to require the conclusion that the Legislature intended the imposition of punishment on each of the indictments even though they arose out of the same criminal episode. [482-487]

Indictments found and returned in the Superior Court Department on March 13, 1997.

The cases were tried before *Richard J. Chin,* J.

*Edward B. Gaffney* for the defendant.

*Heather Spellman (Kevin E. Connelly,* Assistant District Attorney, with her) for the Commonwealth.

Gillerman, J. Following a two-day jury trial, the defendant was convicted on charges of indecent exposure, lewd and lascivious behavior, indecent assault and battery of a person fourteen or over, and assault with intent to rape. On appeal he claims (i) that the judge failed to give timely instructions to the jury regarding the permissible use of fresh complaint testimony, and (ii) that there occurred violations of the defendant's Federal

constitutional right not to be subjected to double jeopardy[1] and his common law right not to be sentenced on both the assault with intent to rape charge and the indecent assault and battery charge.[2] We affirm the judgments.

The material facts which the jury could have found are these: the victim, then seventeen years old, was employed at Burger King in North Dartmouth. On April 24, 1996, she was walking to work on Route 6. A stranger in a black vehicle offered her a ride; she accepted.

The defendant drove five miles past Burger King, down a dirt road, parked the car, shut off the ignition, and took a condom out of his wallet. The victim protested, but her effort to exit the vehicle was frustrated by a power lock on the passenger door controlled by the defendant.

The defendant persisted, but the victim rejected his advances and insisted that she had to get to work. The defendant offered money; that, too, was rejected. Then the defendant reclined the victim's seat and succeeded in "leaning" on top of her. He attempted to unbutton her pants, and eventually succeeded in doing so. At that point the victim told the defendant that she would have her uncle kill him.

The defendant, frightened, backed off. He returned to his own seat, unzipped his pants, exposed his penis, and proceeded to masturbate. Then he drove the victim to work, telling her that he was sorry and asking that she not tell anybody. When the victim finally left the defendant's vehicle, she noted the defendant's license plate number. She gave that information, together with a complete statement of events, to the police, and she called her mother.

1. *Instructions on fresh complaint.* Shortly after the victim's mother began her fresh complaint testimony at the trial, the

---

[1] The defendant's brief cites no Federal case and makes no reasoned argument under the Fifth Amendment to the United States Constitution. For that reason we discuss his claim regarding duplicative convictions and sentences under Massachusetts common law. The defendant is not thereby harmed, however, for the "result [of an argument regarding double jeopardy] is the same under the Fifth Amendment and laws of the Commonwealth." *Luk* v. *Commonwealth*, 421 Mass. 415, 416 n.3 (1995).

[2] The indictments on the remaining charges were filed with the defendant's consent.

judge gave the jury the customary limiting instructions on fresh complaint testimony. See *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992); *Commonwealth* v. *Scanlon*, 412 Mass. 664, 674 (1992). He also gave the same limiting instructions in his charge to the jury. As to these events there is no dispute; the judge was clear and complete in his instructions. The dispute on this branch of the case arises only because the judge did not give the same limiting instructions before the fresh complaint testimony of the police sergeant who took the victim's statement.

The sergeant testified almost immediately after the victim's mother.[3] The mother's testimony was brief; it occupies sixteen pages of the transcript. The defendant did not object to the obvious omission by the judge.

There was no substantial risk of a miscarriage of justice where the judge failed to give the limiting instruction shortly after he had given the instruction during the mother's testimony. Moreover, the judge repeated the limiting instruction in his charge to the jury. See *Commonwealth* v. *Morais*, 431 Mass. 380, 385 (2000).

2. *Duplicative punishments.* Indecent assault and battery[4] is not a lesser-included offense of assault with intent to rape.[5] *Commonwealth* v. *Morin*, 52 Mass. App. Ct. 780, 787 (2001). Further to the same point, intent to rape is not an element of indecent assault and battery, and a battery is not an element of assault with intent to rape. The judge sentenced the defendant on the assault with intent to rape charge to a term of two years to three years, and on the indecent assault and battery charge to a consecutive term of probation of five years. The defendant argues that the conduct supporting the two offenses with which he is charged "is so closely related in fact as to constitute in

---

[3] There was one intervening witness whose peripheral testimony occupies only three and one-half pages in the transcript.

[4] Indecent assault and battery is defined as an "intentional, unprivileged and indecent touching of the victim." *Commonwealth* v. *Mosby*, 30 Mass. App. Ct. 181, 184 (1991).

[5] The elements of assault with intent to rape are "(1) an assault upon the victim, and (2) a specific intent by the defendant at the time of the assault to rape the victim." *Commonwealth* v. *Fulgham*, 23 Mass. App. Ct. 422, 427 (1987).

substance but a single crime," and for that reason the conviction and sentence on the charge of indecent assault and battery should be vacated.

We accept, for the purposes of this case, the defendant's assertion that the events of which the victim complains were so closely related in fact as to constitute a single criminal episode, but we disagree that the sentence should be vacated. We rest our conclusion on the ground that the legislative purpose in respect of each of the two indictments was sufficiently distinct to require the conclusion that the Legislature intended the imposition of punishment on each of the two indictments even though they arose out of the same criminal episode.

A defendant may be convicted of two statutory offenses arising from a single criminal episode[6] if each crime, as in this case, "requires proof of an additional fact that the other does not." *Commonwealth* v. *Crocker*, 384 Mass. 353, 357 (1981), citing the long-standing rule appearing in *Morey* v. *Commonwealth*, 108 Mass. 433 (1871).[7] The *Crocker* court

---

[6] We use the phrase "a single criminal episode" to refer to "an isolated act or a continuously linked series of acts." Compare *Commonwealth* v. *Wolinski*, 431 Mass. 228, 239 (2000).

[7] In *Morey*, the court wrote, "A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Id.* at 434.

Frequently overlooked, however, is the concluding paragraph of the *Morey* opinion:

> "The question of the justice of punishing the offender for two distinct offences growing out of the same act was a matter for the consideration of the grand jury and the attorney for the Commonwealth in the presentment and prosecution, of the court below in imposing sentence, or of the executive in the exercise of the pardoning power. It is not within the jurisdiction of this court as a court of error." *Id.* at 436.

It is that question of "justice" which requires exploration. See *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 662-663 (1979):

> "[T]here may be an element of harassment in the use of multiple charges in the same prosecution when they open up a prospect of 'double' punishment for crimes not duplicative in a technical sense, but *so closely related in fact as to constitute in substance but a single crime*" (emphasis added). (Kaplan, J.)

contrasted (and overruled) the reasoning appearing in *Commonwealth* v. *Catania,* 377 Mass. 186, 191 (1979). The *Catania* court concluded that the charged offenses — larceny and uttering a forged instrument, neither being a lesser included offense of the other, see *Crocker, supra* at 358 — "rested on the ground that the evidence presented at Catania's trial in support of the uttering offense was the same as that in support of the larceny offense." *Id.* at 359.

*Crocker* holds that this was error because the *Catania* opinion "looked beyond the required *elements* of the statutory offenses (which is the focus of *Morey*) to the actual evidence introduced at the defendant's trial" (emphasis added). *Id.* at 359. The error in *Catania* was important; it demonstrated that a departure from the elements-based *Morey* test in favor of a judicial assessment of the evidence at a trial of multiple offenses (the so-called "conduct-based" test, see *Commonwealth* v. *Arriaga,* 44 Mass. App. Ct. 382, 388-389 [1998]), "runs the risk of unnecessary intrusion into the legislative prerogative to define crimes and fix punishments." *Crocker, supra* at 359. The court continued:

> "[T]he prohibition against duplicitous convictions at a single criminal proceeding is properly limited to ensuring that the court does not exceed its legislative authorization by imposing multiple punishments for a single legislatively defined offense. . . . *In short, the prohibition against duplicitous convictions limits not the legislative power to declare substantive criminal law but rather the judicial interpretation of that law*" (emphasis added). *Id.* at 360.

The *Crocker* court continued its discussion of *Morey.* The court emphasized that the "assumption underlying the *Morey* rule, which was adopted by the Supreme Court in *Blockburger* v. *United States,* 284 U.S. 299, 304 (1932), is that the Legislature 'ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the "same offense" [as defined by *Morey* and *Blockburger*], they are construed not to authorize cumulative punishments in the absence of a clear indication of

contrary legislative intent.' *Whalen* v. *United States* [445 U.S 684, 692 (1980)]. Similarly, *where expressions of legislative intent indicate that double punishment should not be imposed, courts should implement that intent even though the offenses are distinct under the* Morey *test"* (emphasis added). *Crocker*, 384 Mass. at 360.

The *Crocker* court then considered the question that arises when, as in the case before the *Crocker* court — involving uttering and larceny, both arising out of the same criminal episode but neither, as we have said, being a lesser-included offense of the other — there is "*no* indication of legislative intent . . . beyond that embodied in the *Morey* rule" (emphasis added). *Id.* at 361. To resolve the question, the court looked to the "distinct legislative policies" with which the two statutes are concerned:

> "The prohibition against larceny by false pretenses, contained in the chapter punishing crimes against property (G. L. c. 266), is designed to protect against theft of property by fraudulent means. The prohibition against uttering a forged instrument, contained in the chapter punishing forgery and crimes against the currency (G. L. c. 267), is designed additionally to further the social interest in the integrity of commercial and other legal instruments." *Id.* at 361.

Based on the distinct legislative policies embedded in the two statutes, the *Crocker* court concluded that the defendant's convictions at one trial for both charges "did not subject him to multiple punishments for the same offense in contravention of the double jeopardy clause or any rule of our common law."

*Commonwealth* v. *Alvarez*, 413 Mass. 224 (1992), is a variation on the same theme. Rejecting the rigid application of the *Morey* rule, the court said,

> "The 'same evidence' rule [i.e., the *Morey* rule] is a principal of statutory construction designed to aid in the judicial interpretation of criminal statutes where the Legislature has not expressed an intent as to consecutive punishments. . . . *Where the Legislature has specifically authorized cumulative punishment under two statutes, even if the two statutes proscribe the same conduct under the*

Morey *test, a court's job of statutory construction is terminated, and the intent of the Legislature is to be enforced*" (emphasis added).

*Id.* at 232.

In *Alvarez*, the interpretive issue was not in doubt because the Legislature "has made it clear that two consecutive sentences must be imposed by *expressly* providing that the sentence imposed upon the violation of [G. L. c. 94C,] § 32J[, the school zone statute,] must begin after the sentence imposed on the violation of the predicate crime has expired" (emphasis added). *Id.* at 232. See also *Commonwealth* v. *Rivera*, 397 Mass. 244 (1986), discussing *Commonwealth* v. *Jones*, 382 Mass. 387 (1981), and approving the holding in *Jones* that even when, as in *Jones*, the *Morey* standard for permitting separate punishments for a single incident is satisfied, "the Legislature did *not* intend to punish a defendant for homicide by motor vehicle or [for] operating so as to endanger if he has already been punished for manslaughter arising out of the same incident . . ." (emphasis added). *Rivera, supra* at 253.

In the case before us (involving two charges, neither being the lesser included of the other, but arising out of one criminal episode, as the defendant would have us assume)[8] the interpretive issue *is* in doubt; the Legislature "has not expressed an intent as to consecutive punishments" regarding the two crimes at issue: indecent assault and battery and assault with intent to rape.

We apply, then, the *Crocker* analysis to the facts of this case. Here, both statutes — indecent assault and battery and assault with intent to rape — are contained in G. L. c. 265 (viz., § 13H and § 24), but they are noticeably distinct in purpose. Section 13H (indecent assault and battery on a person over the age of fourteen) is designed to protect against, and punish, unwanted, indecent *touching*; § 24 (assault with intent to rape) is designed to protect against, and punish, the threat of a violent,

---

[8]It is not unreasonable to perceive what the defendant did to the victim as one continuously linked series of acts which began the moment the defendant drove off the road against the victim's wishes and ended when he climbed off the victim and returned to the driver's seat for his own solitary activities.

unwanted invasion of a woman's body.[9] Each of these crimes has distinct, independent importance, and we see no basis for the conclusion that the Legislature intended the courts to disregard an unwanted, indecent touching of the victim simply because, in one episode, the defendant also assaulted the same person, intending to rape her. The battery — the indecent touching which is not an element of § 24 — cannot be overlooked.

Upon unchallenged instructions from the judge, the jury found the defendant guilty of both charges. Absent, in our view, is any legislative policy requiring us to conclude that the defendant should be punished only once for the commission of two distinct crimes.

Our opinion in *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382 (1998), is to be read in conjunction with this opinion.

The judgments are affirmed.

*So ordered.*

---

[9]Punishment under § 24 permits a maximum imprisonment for not more than twenty years in a State prison; § 13H permits a maximum imprisonment in a State prison for not more than five years.