COMMONWEALTH vs. JAMES LICATA.

Middlesex. January 7, 1992. - May 15, 1992.

Present: LIACOS, C J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ

*Rape. Evidence*, Fresh complaint. *Practice, Criminal*, New trial, Assistance of counsel, Judicial discretion. *Constitutional Law*, Assistance of counsel.

This court, upon reconsideration of the doctrine of fresh complaint in rape cases, concluded that the fact and details of a fresh complaint shall continue to be admissible in evidence to eliminate unwarranted skepticism arising from a perception of the victim's having remained silent [656-659]; however, the trial judge should appropriately instruct the jury at the time the evidence is admitted as well as during the jury instructions, and the judge may exclude or limit the needless repetition of details [659-660].

Where the affidavit of a criminal defendant in support of his motion for a new trial raised a serious issue of constitutional importance (the effective assistance of counsel) the judge should have held an evidentiary hearing before ruling on the motion; the case was remanded for an evidentiary hearing on the issue. [660-662]

INDICTMENTS found and returned in the Superior Court Department on June 29, 1989.

The cases were tried before *Hiller B. Zobel*, J., and a motion for a new trial was considered by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Charles K. Stephenson* for the defendant.

*Marguerite T. Grant*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. On November 17 1989, the defendant was found guilty on three indictments charging rape of a single victim. See G. L. c. 265, § 22 (*b*) (1990 ed.). Approximately one year after sentencing, he filed a motion for a new trial on

the ground that he had been denied effective assistance of
counsel.[1] See Mass. R. Crim. P. 30 (b), 378 Mass. 900
(1979). The motion was denied without hearing. The defend-
ant appealed from his convictions and from the refusal of the
motion judge, who was also the trial judge, to grant him a
new trial. The Appeals Court consolidated the appeals. We
granted the defendant's application for direct appellate re-
view. Mass. R. A. P. 11, as amended, 409 Mass. 1602
(1991). We uphold the defendant's convictions, but vacate
the denial of the defendant's motion for a new trial and re-
mand the motion to the Superior Court for hearing.

1. *Facts.* On the evidence admitted, the jury could have
found the following facts. On the night of May 10, 1989, the
victim met the defendant, a man whom she did not know, at
a bar in the Marriott Hotel in Burlington. They talked for
approximately two hours and exchanged pieces of paper on
which they had written their names, addresses, and telephone
numbers. The victim declined the defendant's invitation to
return home with him, but she accepted his offer to accom-
pany her to her automobile. It was raining. The victim's au-
tomobile was parked at some distance from the hotel en-
trance. The defendant, whose automobile was parked in a
fire lane near the entrance, offered her a ride to her automo-
bile. She accepted.

Once in the defendant's automobile, the defendant began
to kiss the victim over her objection. She started to cry. She
indicated that she wanted the defendant to stop. The defend-
ant then forced her to submit to two acts of unnatural sexual
intercourse and one act of sexual intercourse. The defendant
used threatening language and made vulgar remarks with
sexual epithets pertaining to the victim.

Following these acts, the defendant put his arm around the
victim. She embraced him so as to retrieve from his pocket
the piece of paper on which she had written her name, ad-

---

[1] On February 27, 1990, the defendant was sentenced to three concurrent
prison terms of from ten years to twenty years, three years to be served
and the balance suspended. His motion for a new trial was entered on the
docket on May 6, 1991.

dress, and telephone number. The victim left the automobile. She went to her vehicle. She did not enter the hotel to inform anyone of the defendant's attack, but proceeded instead to drive away.

On her way home, the victim was stopped for driving in excess of the speed limit by Reading police Officer James Collins. Initially, she did not inform Officer Collins that she had been raped, but, after he returned to his cruiser (without giving her a citation), she called him back to her automobile and told him that a man had forced her to have sexual intercourse. The victim accompanied the officer to the Reading police station, where she made a statement describing the details of the attack. Officer Collins then took the victim to a hospital, where a nurse, Patricia Normandin, took information concerning the attack.

2. *Fresh complaint doctrine.* During the prosecution's case-in-chief, Collins and Normandin testified that the victim told them that she had been raped; they testified not only to the fact of the complaints but also to the details. The defendant concedes on appeal that this testimony was admissible under the fresh complaint doctrine,[2] but, noting the concerns we raised in *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646 (1991),[3] he asks us to reconsider the doctrine.[4]

---

[2]The defendant does not argue that the complaints were insufficiently fresh. The victim made both of her statements within a few hours of the attack.

[3]Our concerns focused primarily on the use of the Massachusetts rule allowing evidence beyond the fact of a fresh complaint, namely, the use of the details of the complaint, so as to pile on evidence which might "create [a] risk that the jury will use the details of the fresh complaints as substantive evidence that the crime actually occurred." *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646 (1991). We were also troubled by the sexist origins of the rule. *Id.* at 646 n.7. See *Commonwealth* v. *Bailey*, 370 Mass. 388, 392, 394 n.7 (1976).

We note that in *Lavalley, supra* at 642, 646, there were five fresh complaint witnesses and a videotape recording of the victim's statement of complaint to the police. There was no such "piling on" of that nature in this case.

[4]The defendant did not object to the testimony of the two fresh complaint witnesses at trial. At the time of his trial, the fresh complaint doctrine was well established (we had not yet raised the concerns expressed in

Under the fresh complaint doctrine, an out-of-court complaint seasonably made by the victim after a sexual assault is admissible as part of the prosecution's case-in-chief.[5] Evidence of the complaint is admissible only to corroborate the complainant's testimony; it cannot be presented to establish the truth of the complaint itself.[6] In Massachusetts, unlike most jurisdictions, a witness may testify to the fact of a complaint and also to the details of the complaint.[7] See *Lavalley*, *supra* at 643; *Commonwealth* v. *Bailey*, 370 Mass. 388, 391-392 (1976).

In *Lavalley*, we expressed concern regarding the fresh complaint doctrine. We stated that we were "troubled by a rule which assumes that only those victims who complain of rape were actually raped, while those who remain silent somehow consented to the sexual assault." See *Lavalley*, *supra* at 646 n.7. We strongly disagree with the notion that a rape victim naturally will complain of an attack soon after it occurs. It is not difficult to understand a rape victim's reluctance to discuss with others, particularly strangers, the uncomfortably specific details of a sexual attack. Additionally, a victim must endure the "[s]uspicion and disbelief" with

---

*Lavalley*), and there was little question concerning the testimony's admissibility. See note 2, *supra*. However, both parties now have briefed the issue fully, and we choose to reexamine the doctrine.

[5]The complainant need not have been impeached, nor must the complaint have been a spontaneous utterance. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 691 n.5 (1982).

[6]"Corroborative testimony has been described as 'testimony which tends to strengthen, confirm or make more certain the testimony of another witness.' " *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. 515, 523 (1991), quoting *State* v. *Bellamy*, 64 N.C. App. 454, 459 (1983). See *Commonwealth* v. *Barbosa*, 399 Mass. 841, 848-849 (1987). See also P.J. Liacos, Massachusetts Evidence 170-172 (5th ed. 1981 & Supp. 1985).

[7]The rule in the majority of jurisdictions is that, when the complainant has not been impeached and when the complaint is not a spontaneous utterance, see note 8, *infra*, only the fact of the complaint is admissible during the prosecution's case-in-chief. For a list of cases from other jurisdictions, see *Lavalley*, *supra* at 643 n.4. Among the States with rules similar to our own are Connecticut, see *State* v. *Pollitt*, 205 Conn. 61, 76 (1987), and Tennessee, see *State* v. *Lewis*, 803 S.W.2d 260, 263-264 (Tenn. Crim. App. 1990).

which society greets those who allege sexual assault. See generally Taylor, Rape and Women's Credibility: Problems of Recantations and False Accusations Echoed in the Case of Cathleen Crowell Webb and Gary Dotson, 10 Harv. Women's L.J. 59, 59 (1987). Not surprisingly, many rape victims choose not to complain at all. In short, lack of a fresh complaint in no way necessarily implies lack of rape.

Troubled as we are by a doctrine which has its origins in outmoded, and invalid, sexual myths, we need not embrace those views to recognize the unfortunate skepticism that exists as to the truth of allegations of rape where the victim is perceived as having remained silent. "Whatever may have been the historical origin of the fresh complaint doctrine, it should now be seen in relation to the common observation . . . that juries tend toward considerable and perhaps inordinate skepticism in rape cases, above all where there is a suggestion of willingness or acquiescence on the part of the victim" (footnote omitted). *Bailey, supra* at 394. Thus, we continue to perceive a need for the fresh complaint doctrine. We cannot ignore the societal tendency to disbelieve sexual assault victims and to presume that a rape victim will make a prompt complaint. See H. Kalven, Jr., & H. Zeisel, The American Jury 249-254 (1966). Accordingly, we conclude that fresh complaint evidence should remain admissible "on the ground that a victim's failure to make prompt complaint might be viewed by the jury as inconsistent with the charge of sexual assault . . . and in the absence of evidence of complaint the jury might assume that none was made" (citation omitted). *Bailey, supra* at 392. This rationale does not assume that only those rape victims who do make a fresh complaint are credible; it simply allows rape victims who do complain promptly to eliminate any unwarranted skepticism arising from lack of evidence of a prompt complaint.

Moreover, we shall continue to hold admissible both the fact and the details of a fresh complaint. When a witness is limited to testifying only that the victim made a complaint, the jury must rely on that witness's interpretation of the victim's statements. In our view, the better approach remains

one which allows a jury to make their own interpretation based on the details of the statements. "By allowing admissibility of all details, the [doctrine gives] the factfinder the maximum amount of information with which to assess the credibility of the . . . complaint evidence as well as the overall credibility of the victim." Graham, The Cry of Rape: The Prompt Complaint Doctrine and the Federal Rules of Evidence, 19 Willamette L. Rev. 489, 511 (1983) (proposing such an amendment to the Federal Rules of Evidence). See generally *Bailey, supra* at 395.[8]

In *Lavalley* we also expressed concern that repetitive testimony from several witnesses regarding the details of the complaint may lend undue credibility to the complainant's testimony. See *Lavalley, supra* at 646 (concern that jury will treat details of complaint as substantive, rather than corroborative, evidence). See also *Cole* v. *State*, 83 Md. App. 279, 286 (1990) ("prejudice is self-evident when one party's version of an incident is allowed to be repeated again and

---

[8]While a majority of States allow only the facts, and not the details, of a fresh complaint to be admitted in evidence during the prosecution's case, many of these States' evidentiary rules allow the admission of the details on other grounds. Many jurisdictions that claim to admit only the fact of the complaint also admit enough details to reveal the nature of the complaint. See, e.g., *State* v. *Campbell*, 299 Or. 633, 646 (1985) (admitting the fact and "enough of the hearsay declaration 'to show the nature of the complaint, even though it involves to some extent the particulars thereof' "). In addition, most other States do allow testimony of the details of the complaint in two situations. First, if the complainant is impeached, the details may become admissible as prior consistent statements that corroborate the complainant's testimony. See, e.g., *Cole* v. *State*, 83 Md. App. 279, 294-295 (1990). Second, if a complaint is an excited utterance, it is admissible under an exception to the hearsay rule as substantive evidence. See *Lavalley, supra* at 643 n.4, and cases cited. Because evidence of the details of a rape complaint is often admissible in other jurisdictions as well as our own, our rule essentially relates only to the timing of the introduction of that evidence. See *Bailey, supra* at 396.

It should be noted that, under our rule, only those details to which the victim has testified generally at trial are admissible as corroboration by way of evidence of a prior fresh complaint. *Commonwealth* v. *Kirouac*, 405 Mass. 557, 565 (1989). See *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. 515, 527 n.8 (1991). See also *Commonwealth* v. *Scanlon, post* 664, 670-671 (1992).

again"). We remain concerned about this aspect of the rule. Trial judges should be cautious in admitting evidence of a fresh complaint. The trial judge should instruct the jury as the evidence is admitted and again during the jury instructions that fresh complaint testimony does not serve as substantive evidence that the crime in fact occurred. The judge should instruct the jury that the purpose of the fresh complaint evidence is to corroborate the victim's testimony, namely, as it relates to the credibility of the victim's testimony at trial. Fresh complaint evidence is corroborative only if it shows that the victim seasonably complained of the attack.[9] Because the evidence is corroborative, the judge may exclude needless repetition of the details of the fresh complaints. See *Lavalley, supra* at 646. "When it appears that admission of details would operate unjustly — as by inciting a jury through a needless rehearsal of the particulars of a gruesome crime — the judge may well limit the testimony in his discretion." *Bailey, supra* at 397.

3. *Denial of motion for a new trial without hearing.* The defendant filed a motion for a new trial, accompanied by two affidavits, arguing that he received ineffective assistance of counsel. See Mass. R. Crim. P. 30 (b). The judge declined to hold a hearing and summarily denied the motion. The defendant appeals from the judge's refusal to grant him a hearing. "The judge may rule on the issue or issues presented by [a] motion [for a new trial] on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits." Mass. R. Crim. P. 30 (c) (3), 378 Mass. 900 (1979). While ordinarily we defer to the discretion of a trial judge on whether a motion for new trial requires an evidentiary hearing, see *Fogarty* v. *Commonwealth*, 406 Mass. 103, 107, 110-111 (1989), the allegations in the defendant's affidavit, if true, raise serious issues as to the adequacy of the appointed trial counsel's interest in preparing and conducting the defense. Thus, in these unusual

---

[9]The judge in this case gave both timely and correct limiting instructions to the jury.

circumstances, we believe it would be in the interest of justice that the defendant's substantial showing on an issue of constitutional importance (the effective assistance of counsel) be heard. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257-258 (1981) (interpreting rule 30 [c] [3]). See also *Commonwealth* v. *Meggs*, 30 Mass. App. Ct. 111, 114 (1991) (substantial issue raised by motion and affidavits requires evidentiary hearing). Thus, we vacate the motion judge's ruling and remand the motion for new trial to the Superior Court for a hearing. See *Commonwealth* v. *Moreau*, 30 Mass. App. Ct. 677, 683 (1991), cert. denied, 112 S. Ct. 915 (1992).

In order to prove ineffective assistance of counsel, the defendant must show that counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer," and that this performance "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).[10] The defendant argues that counsel wrongly advised him not to testify; further, that she failed to interview or call at trial potential character witnesses, meet with him for a sufficient period of time to develop a defense, or investigate the complainant's background. As a result, he contends, counsel deprived him of the defense that the complainant consented to sexual intercourse.

The defendant has raised a substantial issue with regard to both elements of the *Saferian* test. If the defendant's sworn allegations are true, his counsel failed to pursue adequately a consent defense, which was the only realistic defense in light of the strong evidence that the defendant and the complainant did have sexual intercourse on May 10, 1989. See *Commonwealth* v. *Haggerty*, 400 Mass. 437, 442 (1987) ("Fail-

---

[10]The defendant argues that he was deprived of his rights under both the State and Federal Constitutions. We need only evaluate trial counsel's performance under the State constitutional standards set forth in *Saferian*, 366 Mass. 89, 96 (1974), because, "if the *Saferian* test is met, the Federal test [see *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984)] is necessarily met as well." *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985).

ure to investigate the only defense a defendant has, if facts known to or with minimal diligence accessible to counsel support that defense, falls beneath the level of competency expected"). The advice to defendant that he not testify is also troublesome, given that he admits having had sexual intercourse with the complainant, that he claims he submitted voluntarily to a blood test for purposes of identification, and that he alone could have given a different account of his actions on the night in question. If counsel did not interview potential defense witnesses or spend sufficient time with the defendant prior to trial, these failures also may have detracted from a consent defense. Reliance on the testimony of one defense witness, the bartender who saw the defendant and the complainant talking and kissing, and on cross-examination of prosecution witnesses, see *Haggerty*, *supra* at 442, would not meet counsel's obligation to the defendant unless these other reasonable options had been exhausted.

While the defendant has raised a substantial issue, he has not yet proved that he received ineffective assistance of counsel. We remand the defendant's motion for an evidentiary hearing, at which the defendant may present his own testimony and that of others who he believes should have been called as trial witnesses. See *Commonwealth* v. *Rosado*, 408 Mass. 561, 568 (1990). The motion judge may also hear evidence concerning counsel's reasons for conducting the defense as she did. See *Commonwealth* v. *White*, 409 Mass. 266, 272 (1991) ("In cases where tactical or strategic decisions of the defendant's counsel are at issue, we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful"). Finally, the judge must determine whether any failures on the part of trial counsel deprived the defendant of a consent defense. See *Saferian*, *supra* at 96.

4. *Conclusion.* We affirm the defendant's convictions. We vacate the judge's ruling on the motion for a new trial, and

we remand the motion to the Superior Court for an evidentiary hearing.

*So ordered.*